*1323
 
 OPINION
 

 By the Court,
 

 Springer, J.:
 

 Appellant was convicted of one count of embezzlement after allegedly taking money from her employer, Dr. Vincent D’Ascoli. Appellant, as D’Ascoli’s bookkeeper, admitted that she altered entries in the office payment ledgers. Appellant, however, argued that she did so at D’Ascoli’s command and that D’Ascoli took the cash from the office. D’Ascoli testified that he did not take the cash. D’Ascoli believed that appellant must have stolen the money from the office.
 

 During the jury trial, the district court permitted appellant’s former employer, Dr. Timothy Fraser, to testify that appellant embezzled money from his office. Appellant contends that the district court abused its discretion in admitting Dr. Fraser’s testimony. Because the district court failed to conduct a
 
 Petrocelli
 
 hearing on the record, we are unable to adequately review appellant’s contention.
 

 “The use of uncharged bad acts to convict a defendant is heavily disfavored in our system of criminal justice. Such evidence is likely to be prejudicial or irrelevant, and forces the accused to defend [herself] against vague and unsubstantiated charges. . . . Evidence of uncharged misconduct may unduly influence the jury, and result in a conviction of the accused because the jury believes [she] is a bad person. . . . The use of specific conduct to show a propensity to commit the crime charged is clearly prohibited by Nevada law . . . and is commonly regarded as sufficient grounds for reversal.” Berner v. State, 104 Nev. 695, 696-97, 765 P.2d 1144, 1145-46 (1988) (citations omitted).
 

 In Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985), we concluded that before admitting evidence of a prior bad act or collateral offense, the district court must conduct a hearing outside the presence of the jury. During the hearing, the state must present its justification for admission of the evidence, the state must prove by clear and convincing evidence that the defendant committed the collateral offense, and the district court must weigh the probative value of the proffered evidence against its prejudicial effect. We now hold that the
 
 Petrocelli
 
 hearing must
 
 *1324
 
 be conducted on the record so as to provide this court with a meaningful opportunity to review the district court’s exercise of discretion.
 
 [1]
 
 We also hold that following the
 
 Petrocelli
 
 hearing, the district court must state on the record its findings of fact and conclusions of law. Accordingly, we reverse the judgment of conviction and remand this matter to the district court for a new trial.
 

 Rose, C. J., and Steffen, J., concur.
 

 Shearing, J., with whom Young, J. joins, dissenting:
 

 The majority holds that appellant Linda Armstrong’s conviction for embezzlement must be reversed because the trial court conducted a hearing on the admissibility of evidence off the record. The reversal is unnecessary. The trial judge made specific findings as to his reasons for the ruling, and these findings, in conjunction with evidence adduced at trial, provide this court with sufficient information to review and uphold the trial judge’s ruling.
 

 The evidence in question was the testimony of Armstrong’s former employer that he believed that Armstrong embezzled money from him and that she was dishonest. This evidence was admitted after Armstrong testified that she experienced no problems working for this former employer and that he had recommended her to her present employer. Armstrong also proffered a number of character witnesses who testified that she was honest.
 

 There is no dispute that the admission of uncharged bad acts against a criminal defendant is disfavored in our system of criminal justice.
 
 See
 
 NRS 48.045(2).
 
 [1]
 
 However, there is also no dispute that our law recognizes that under certain circumstances it is appropriate to admit such evidence. The State argued that evidence regarding Armstrong’s performance at her prior employer’s office was admissible on the issue of intent, knowledge of bookkeeping procedures, and similarity of the plan or scheme. If this were the only reason for its admission, whether the probative value outweighed the prejudicial effect would have been difficult to determine without a transcript. However, an
 
 *1325
 
 additional factor exists: Armstrong specifically testified that she experienced no problems at her prior employment and was never charged with any misconduct. Introducing the former employer’s testimony to rebut this assertion was a proper “other purpose” under NRS 48.045(2).
 

 In United States v. Lara, 956 F.2d 994, 997 (10th Cir. 1992), the court was faced with a similar situation and testimony regarding another prosecution to be admitted, stating:
 

 Evidence of the other prosecution was not introduced to show the defendant’s bad character. Rather, it was used to challenge the truthfulness of his testimony. Rule 404(b) [similar to NRS 48.045(2)] shields a defendant from unfair prejudice but it is not a license to give misleading or false testimony. Under the circumstances, the use of this evidence for impeachment was a permissible “other purpose” under Rule 404(b).
 
 Cf. United States v. Stockton,
 
 788 F.2d 210, 219 n. 15 (4th Cir.) (Impeachment may quality as a permissible use of prior bad acts under Rule 404(b)),
 
 cert. denied,
 
 479 U.S. 840, 107 S. Ct. 147, 93 L. Ed. 2d 89 (1986).
 

 Nor was the admission of this evidence an abuse of the court’s discretion under Rule 403 [similar to NRS 48.035]. A district court has broad discretion in determining whether the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403;
 
 United States v. Martinez,
 
 938 F.2d 1078, 1082 (10th Cir. 1991). The district court’s determination will not be disturbed absent an abuse of that discretion.
 

 The trial judge acknowledged his duty to hold a
 
 Petrocelli
 
 hearing outside the presence of the jury to determine whether there was clear and convincing evidence that Armstrong committed the prior bad act, and whether the evidence was more probative than prejudicial. Unfortunately, he held that hearing olf the record. While it is desirable that such a hearing be held on the record, where the pertinent facts for reviewing the trial judge’s finding are before this court, reversal of this case is not warranted. After the hearing, the trial judge stated on the record:
 

 The trial court has weighed the probative value of the evidence against the potential prejudicial impact and enters the following finding:
 

 The defense introduced evidence concerning a prior working relationship between the Defendant, Linda Armstrong, and Dr. Timothy F. Fraser. The State now wishes to rebut certain potential inferences from the testimony of Ms. Armstrong concerning her working relationship with Dr. Fraser.
 

 
 *1326
 
 The State will allow that testimony in rebuttal from Dr. Fraser relating to his working relationship with Ms. Armstrong insofar as he may testify as to his opinion of her general and specific character as well as general irregularities he feels existed during their working relationship with regard to her services as a financial manager or assistant within his office.
 

 No specific checks, vouchers, ledger cards, day sheets or the like are to be presented to Dr. Fraser for testimony specifically concerning the same.
 

 Although we have no record of what evidence or offer of proof was made to the trial judge at the
 
 Petrocelli
 
 hearing, we may reasonably infer that the judge had at least the testimony of the former employer before him. The former employer testified at trial that after Armstrong left his employ, he reviewed the books and found an excessive number of write-offs for patients who were recorded as not having paid their bills. The patient records showed that there was no reason for the write-offs, except that in all instances the patients paid with cash, and that money did not appear on the deposit slips or go into the business. The employer further testified that Armstrong was responsible for handling the money, and that he was “a hundred percent certain” that Armstrong kept the money. This testimony is enough to support the finding by the trial judge by clear and convincing evidence that Armstrong embezzled money from her former employer.
 
 See
 
 Tellis v. State, 84 Nev. 587, 590, 445 P.2d 938, 940 (1968).
 

 The trial judge found that the probative value of the employer’s testimony outweighed its prejudicial effect. The admission of evidence after the trial judge has balanced its probative value against its potential for undue prejudice is committed to the trial court’s sound discretion and will not be disturbed in the absence of an abuse of that discretion. Sein v. State, 95 Nev. 89, 97, 590 P.2d 1152, 1157 (1979).
 

 The record amply supports the trial judge’s finding that the probative value outweighed the potential prejudicial impact. First, as the trial judge noted, the defendant herself injected the issue of her character into the trial by calling numerous character witnesses and by testifying that she was honest and had never had any problem at her prior employment. Therefore, the jury would have been misled had the trial judge not permitted Armstrong’s former employer to testify that this was not true. Additionally, Armstrong’s testimony reveals that she knew when she testified that her prior employer had made accusations against her. Armstrong testified as follows:
 

 
 *1327
 
 Were there some accusations levied at you regarding your employment there? o'
 

 No, only the ones I have heard recently.
 
 <
 

 . . . [H]e even said, “If I had something, I’d hire you right now,” and I did hear of Dr. D’Ascoli. So, he knew I was going to apply to Dr. D’Ascoli.
 

 Do you know if he provided a reference for you?
 

 On the phone, he did. I didn’t have a—
 

 How do you know that?
 

 Dr. D’Ascoli told me he called him. . . .
 

 And when you left that employment, you were never aware of any problems; correct?
 

 No.
 

 Were you ever charged with any misconduct—
 

 No.
 

 —regarding your employment then?
 

 Never.
 

 Thus, Armstrong herself injected the issue of her character into the trial by denying any misconduct in her prior employment and saying her prior employer recommended her. Her prior employer’s testimony was admissible to challenge the truthfulness of her testimony. It would be unfair to the State to allow her testimony to go unrebutted.
 
 [2]
 
 After all, the principal purposes for restrictions on the use of character evidence at trial are to prevent the dangers of unfair prejudice and of misleading the jury.
 
 See
 
 NRS 48.035(1). Thus, on the information before us, it is clear that the trial judge did not abuse his discretion in allowing the prior employer’s testimony regarding the defendant’s performance while in his office.
 

 If it was error not to record the
 
 Petrocelli
 
 hearing, the error was harmless. Based on the foregoing analysis, the judgment of the district court should be affirmed.
 

 [1]
 

 We note that this case announces a new rule of law. The application of the rule is prospective only because it is not a rule of constitutional law.
 
 See
 
 Gier v. District Court, 106 Nev. 208, 212, 789 P.2d 1245, 1248 (1990).
 

 48.045(2) states:
 

 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 

 [2]
 

 Armstrong’s former employer testified as follows:
 

 Q: Is Linda Armstrong an honest person?
 

 A: I believe that she cannot be honest with herself, and she cannot be honest with others. . . .
 

 Q: Did you ever recommend Linda Armstrong as an employee to Dr. D’Ascoli?
 

 A: No, he called and asked me. I talked to him about it. I told him that she knew what she was doing.
 

 Q: Did you tell him anything else?
 

 A: Yes, I told him to watch the cash.