*1289
 
 OPINION
 

 Per Curiam:
 

 Appellant John Nathan Meek met a young woman on a bus one morning in May 1993. The woman accompanied Meek to his trailer to have a beer. She alleged that Meek forced her to have repeated sex with him before she screamed for help and was able to escape. Meek claimed that she had sex with him willingly. At Meek’s trial, the State introduced evidence that Meek had attacked another woman four years earlier. At the conclusion of the trial, Meek was convicted of two counts of sexual assault and acquitted of seven other sexual assault counts and one count of kidnapping. We conclude that in addition to other errors during the trial, evidence of the prior bad act was improperly admitted. We therefore reverse and remand this case to the district court.
 

 FACTS
 

 The State presented the following evidence. On May 9, 1993, the young woman left her work early at a day care center in Las Vegas, around 8:30 a.m. She caught the bus to go to her mother’s house in Henderson. At one point, she changed seats so that she could look out the window and sat next to Meek. The two began to talk. He suggested that they have a beer, and the woman
 
 *1290
 
 agreed. They agreed to go to Meek’s place. They got off the bus, walked to a nearby R.V. park, and entered Meek’s trailer. Meek served the woman a beer, and they sat on a couch.
 

 Meek then forced her to have sex with him, though she told him she did not want to. The woman testified to a total of nine incidents of vaginal and anal intercourse, cunnilingus, and fellatio between Meek and herself, performed without her consent and against her will over a span of more than two hours. She did not scream for help because she was scared. She was five feet tall and weighed about 110 pounds. Meek was five feet eleven inches tall, weighed about 200 pounds, and was muscular at the time in question. Meek told the woman that it was her fault, that this is what women were for. He told her that he was lonely because he still loved his ex-girlfriend. He also told her that he was doing crazy things because he had used drugs the night before for the first time and that he did not mean to hurt her.
 

 Meek went to the bathroom once, about ten feet away from the couch, but the woman did not try to leave. At one point when Meek was in the kitchen, also about ten feet away, she tried to run out the door but was unable to unlock the door before Meek grabbed her. He then forced her to have intercourse again.
 

 Meek went through the woman’s purse and recognized her boyfriend from a photo. Meek’s brother had sold a car to the boyfriend. When Meek went to the bathroom another time, the woman got the trailer door open and began screaming. Meek grabbed her, threw her on the couch, and said, “You just killed your boyfriend.” Someone then knocked at the door. The woman pulled back a curtain and started hitting the window and screaming. She saw an older lady outside and told her to call the police. Meek pulled her back and told her again that she had just killed her boyfriend. He then opened the door and looked out. The woman jumped out of the trailer door, fell down, and ran off. She ended up at the trailer of the lady who had knocked earlier. Meek came to the door of that trailer twice, yelling abusively at the young woman. The second time he left her shoe and underwear on the porch. The police showed up shortly thereafter. An officer testified that after his arrest, Meek admitted having sex with the woman but claimed that it was consensual.
 

 The State called as a witness a man who lived at the R.V. park at the time in question. During his testimony, the prosecutor asked the witness if anyone had said anything to him that day. The witness said that comments had been made out in the hallway. Defense counsel objected, and the district judge asked the purpose of the question. The prosecutor replied, “Purpose was he was intimidated by another witness.” The judge excused the jury. The prosecutor stated that Meek’s brothers had referred to
 
 *1291
 
 the witness and other witnesses as “do-gooders” in an intimidating manner. He also said that it was without defense counsel’s knowledge. The judge stated that the matter should not have been brought up in front of the jury. Defense counsel said that he objected and that the jury should be admonished to disregard the remark. The jury returned, no admonishment was given, and the trial continued.
 

 Meek presented evidence that he and the young woman had met before May 9, 1993, and that she had phoned him several times. Meek’s testimony regarding the incident at his trailer tracked the woman’s in general outline but differed in the following crucial ways. He claimed that the woman willingly had sex with him. She got angry, however, when he received a phone call from another woman around 1:00 p.m. and hung up the phone while Meek was still talking. He then got angry at her and threatened to tell her boyfriend what they had done. She said that she would tell everyone that Meek had raped her. The woman then spit on him and slapped and kicked him. He threw her on the couch and told her he would beat her up. She then started screaming for help, and he threw her out.
 

 On cross-examination of Meek, the prosecutor persisted, despite objections sustained by the district judge, in questioning Meek as to whether he had ever sexually assaulted a certain other woman. The judge finally excused the jury. The judge found it reprehensible that the prosecutor was attempting to show unrelated past bad acts of Meek in this manner. The prosecutor maintained that the incidents were strikingly similar and that the other woman would so testify. The judge called the jury back in and, over objection by defense counsel, allowed the prosecutor to represent that he would show that Meek had acted on prior occasions in a manner almost identical to the charged crime. The judge then sustained the defense objection to the line of questioning and said he would also not allow the State to establish the evidence outside the presence of the jury. Nevertheless, when the defense rested shortly thereafter, the State immediately called the other woman as a rebuttal witness, and the judge allowed her to testify over Meek’s objection.
 

 The other woman testified that in April 1989, Meek had secretly followed her home one night after she had come in contact with him at a club. After she parked in her driveway, he forced his.way into the driver’s seat of her car and forced her into the passenger seat. Although she fought with him, he hit her, took her keys, and drove off with her in the car. As Meek drove, he called her a bitch and threatened to have sex with her and then kill her. He continued to beat her as well. At one point he told her that he was on drugs and that he was very lonely because his
 
 *1292
 
 girlfriend had left him. Finally, the woman persuaded Meek to drive back to her home. As they pulled in, her boyfriend also arrived. She got out of the car and told her boyfriend that Meek was trying to kill her. Meek told the boyfriend that she had taken Meek home from the club with her. The boyfriend and Meek fought. She filed a police report, but Meek was never charged.
 

 In closing argument, the prosecutor, Mr. Lukens, objected to a statement made by defense counsel, Mr. Buchanan.
 

 MR. LUKENS: Your Honor. Excuse me, your Honor.
 

 MR. BUCHANAN: Judge, I object to Mr. Lukens. He had his thing and I am going to tell mine.
 

 THE COURT: One at a —
 

 MR. LUKENS: Your Honor—
 

 MR. BUCHANAN: He said everything he had to —
 

 THE COURT: You raise your voice again, I will cite you for contempt. You sit down for a minute Messrs. Lukens and Buchanan and you listen.
 

 I am running this court, and I will rule in the matter which I have been trained today. You will not tell me again how I am to run this courtroom.
 

 At this moment I assess you a fine of $100 as contempt of the court. It will increase by the second if need be.
 

 Do I make myself clear?
 

 MR. BUCHANAN: Clear, your Honor.
 

 THE COURT: Then get up there and act like a gentlemen and don’t you ever shout again.
 

 The jury found Meek guilty of two counts of sexual assault and acquitted him of seven counts of sexual assault and one count of kidnapping. The district court sentenced Meek on each of the two counts to life in prison with the possibility of parole, the sentences to run consecutively.
 

 DISCUSSION
 

 Prior bad act evidence
 

 The evidence that Meek had attacked another woman four years before was improperly admitted. NRS 48.045(2) provides that evidence of other crimes, wrongs, or acts is not admissible as character evidence but may be admissible to prove matters such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 

 [Bjefore admitting evidence of a prior bad act or collateral offense, the district court must conduct a hearing outside the presence of the jury. During the hearing, the state must
 
 *1293
 
 present its justification for admission of the evidence . . . [and] prove by clear and convincing evidence that the defendant committed the collateral offense, and the district court must weigh the probative value of the proffered evidence against its prejudicial effect.
 

 Armstrong v. State, 110 Nev. 1322, 1323, 885 P.2d 600, 600-01 (1994) (citing Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985)).
 
 Armstrong
 
 added the requirement that a
 
 Petrocelli
 
 hearing be conducted on the record to allow this court a meaningful opportunity to review the district court’s exercise of discretion.
 
 Armstrong,
 
 110 Nev. at 1323-24, 885 P.2d at 601.
 

 Here, the district court erred in failing to hold a hearing which met the
 
 Petrocelli
 
 requirements. A hearing of a sort occurred, but part of it was improperly held in the presence of the jury. Moreover, the court never determined whether admission of the evidence was justified, whether it was proven by clear and convincing evidence, or whether the danger of unfair prejudice substantially outweighed its probative value.
 

 The State cites Felder v. State, 107 Nev. 237, 810 P.2d 755,
 
 cert. denied,
 
 502 U.S. 878 (1991), for the proposition that failure to hold a
 
 Petrocelli
 
 hearing is not necessarily reversible error. In
 
 Felder,
 
 the trial court recognized that the prosecutor acted improperly in offering evidence of prior bad acts without requesting a hearing first, but it expressly ruled that the evidence was admissible. This court therefore reviewed that ruling for abuse of discretion and concluded no harmful error occurred.
 
 Id.
 
 at 241-42, 810 P.2d at 757-58.
 

 Felder
 
 is not on point in the instant case because the district court here did not expressly rule on the admissibility of the evidence, or to the extent that it did, it actually ruled that the evidence was not admissible — shortly before allowing it to come in anyway. Moreover,
 
 Felder
 
 has since been followed by
 
 Armstrong.
 
 In
 
 Armstrong,
 
 we concluded that without a
 
 Petrocelli
 
 hearing on the record, we were unable to adequately review appellant’s contention that the district court abused its discretion in admitting evidence of other bad acts.
 
 Armstrong,
 
 110 Nev. at 1323, 885 P.2d at 601.
 

 Petrocelli
 
 has been the law in regard to admission of prior bad act evidence for more than a decade. The district judge in this case made no attempt to adhere to our directive on this matter. He permitted the introduction into evidence of a prior bad act without first holding a hearing to determine if the evidence was admissible. We therefore conclude that the district court committed reversible error in not holding a full
 
 Petrocelli
 
 hearing outside the presence of the jury.
 

 
 *1294
 
 We further conclude that the evidence in question was not admissible under Petrocelli. The court never determined whether admission of the evidence was permissible under NRS 48.045(2), whether the prior act was proven by clear and convincing evidence, or whether the danger of unfair prejudice substantially outweighed its probative value. In regard to the first consideration, the State argues that the evidence is relevant and admissible because the charged crime and the alleged incident with the other woman were so similar in nature: both incidents involved sexual assault or the attempt, Meek met both women by happenstance, Meek told both that he had recently taken drugs, and he told both that he was lonely and missed his former girlfriend. The State fails to specify what relevant proof, allowed by NRS 48.045(2), this similarity would establish, but for the purposes of this analysis, we assume that the State considered it relevant to motive or plan.
 

 The statements that Meek allegedly made to both women regarding his use of drugs and his missing a girlfriend are similar. However, the prior act and the charged crime were otherwise fundamentally quite different. The meeting by happenstance is too general a similarity to deserve much weight, if any. The similarity of the sexual element in both cases is also quite general. Stated broadly enough, similarities can be shown between many acts. The question is whether significant similarities remain after the acts are considered in some detail. In the charged crime, Meek met a woman on a bus in the morning, persuaded her to join him at his home, and allegedly took advantage of her trust and sexually assaulted her. He was accused of using intimidation, but not violence. In the alleged prior bad act, Meek followed a woman late at night by stealth to her home, kidnapped her in her own car, subjected her to direct and brutal violence, threatened to have sex and kill her, drove with her aimlessly for a time, and then returned to her home. In view of the differences between these acts, the similarities between them are insufficient to make the prior act relevant to the charged crime.
 

 Second, it is questionable whether clear and convincing evidence of the prior attack on the other woman was provided. Despite that woman's report to the police, Meek was never charged with a crime. In Kimberly v. State, 104 Nev. 336, 757 P.2d 1326 (1988), this court concluded that the trial court erred in allowing the alleged victim of a prior bad act to testify on the matter. This court held that a grand jury's refusal to indict based on the alleged prior victim's testimony "is a sufficient reason to disqualify the testimony under the clear and convincing evidence
 
 *1295
 
 standard.”
 
 Id.
 
 at 338, 757 P.2d at 1328. While clear and convincing evidence can be provided by a victim’s testimony alone, Keeney v. State, 109 Nev. 220, 227-29, 850 P.2d 311, 316-17 (1993), the other woman’s statement to police was apparently insufficient evidence to establish probable cause of a crime by Meek. Therefore, we conclude that from the record before us, clear and convincing proof of the prior attack was not established.
 

 The third consideration is whether the danger of unfair prejudice substantially outweighed the probative value of the evidence. If the prior act had been admissible for a permissible purpose and had been shown by clear and convincing evidence, its admission would not have been unfairly prejudicial. However, since the first two requirements were not met, the admission of the evidence was harmful error.
 

 Finally, the district court failed to provide jurors with an instruction limiting their use of the prior act evidence. Meek failed to request any such instruction. The State contends that the district court has no duty to give limiting instructions sua sponte. However, in Champion v. State, 87 Nev. 542, 490 P.2d 1056 (1971), this court recognized that a district court does have such a duty in some cases. In
 
 Champion,
 
 it was plain and prejudicial error for the trial court not to give a cautionary jury instruction regarding the evaluation and use of an addict-informer’s testimony, despite defense counsel’s failure to request such an instruction.
 
 Id.
 
 at 544, 490 P.2d at 1057. It was plain error for the district court here not to instruct the jury regarding the proper, limited use of the other woman’s testimony.
 

 The district court erred in failing to hold a
 
 Petrocelli
 
 hearing, erred in admitting the evidence of the prior act, and erred in not giving the jury a limiting instruction regarding proper use of the evidence.
 

 The accusation of witness intimidation in the presence of the jury
 

 The prosecutor’s reference to witness intimidation was improper, and the district court erred in failing to advise the jury to disregard it.
 

 This court disapproved of prosecutorial references to witness intimidation in Lay v. State, 110 Nev. 1189, 1195-96, 886 P.2d 448, 450-51 (1994). “Federal courts have consistently held that the prosecution’s references to, or implications of, witness intimidation by a defendant are reversible error unless the prosecutor also produces substantial credible evidence that the defendant was the source of the intimidation.”
 
 Id.
 
 at 1193, 886 P.2d at 450-51.
 
 *1296
 
 The court in
 
 Lay
 
 noted that the prosecutor never referred to threats or intimidation by the defendant himself and concluded that the improper references did not constitute reversible error.
 
 Id.
 
 at 1193-94, 886 P.2d at 450-51.
 

 In the instant case, the prosecutor acted improperly in referring to witness intimidation before the jury when he was unable to demonstrate that Meek was the source of the intimidation. The prosecutor did not claim that Meek was the source, but jurors likely inferred that his relatives or friends were responsible. Although the single reference made here was not reversible error, the district court should have granted Meek’s request and admonished the jury to disregard the prosecutor’s remark.
 

 Finding defense counsel in contempt and fining him in the presence of the jury
 

 The district court erred in finding Meek’s counsel in contempt and fining him before the jury.
 

 Unquestionably, admonishments to defense counsel are best made outside the jury’s presence. However, a court’s contempt citation to a defense attorney in the jury’s presence does not automatically constitute error. Rather, the conduct of the trial as a whole must be scrutinized to determine whether the defendant was fairly and impartially tried.
 

 United States v. Baresh, 790 F.2d 392, 402 (5th Cir. 1986) (citations omitted). In
 
 Baresh,
 

 after being advised outside of the presence of the jury not to take a particular course of action, counsel immediately proceeded to contemptuously disregard that order. To that extent, counsel’s conduct implies a planned trial tactic to provoke the district judge and leads to the inescapable conclusion that counsel hoped to cause the judge to react in such a manner as to cause error. It would be improper to allow [appellant] to benefit from such a calculated trial ploy.
 

 Id.
 
 Furthermore, the trial court instructed the jury that the fine levied against defense counsel was not a reflection on the defendant.
 
 Id.
 
 at 401.
 
 See also
 
 United States v. Hawley, 768 F.2d 249, 252 (8th Cir. 1985) (though counsel’s actions were provocative and warranted contempt finding, it was clear error to make the finding and have counsel arrested in jury’s presence; however, because of overwhelming evidence of guilt, error was not prejudicial).
 

 The State argues that the trial as a whole was fair and stresses that the district court admonished both counsel. However, only
 
 *1297
 
 defense counsel was found in contempt and fined. The district court erred in doing so before the jury. Unlike the counsel in
 
 Baresh,
 
 Meek’s counsel did not deliberately provoke the court by disregarding its directive. The record indicates that counsel lost his temper in the heat of litigation and shouted at opposing counsel. Even if this warranted a finding of contempt and a fine, the court should have done so without the jury present. A cautionary instruction was also in order, although Meek apparently did not request one.
 

 The instruction on reasonable doubt
 

 Meek claims that the jury instruction on reasonable doubt was unconstitutional and violative of NRS 175.211. The instruction stated that to be reasonable a doubt must be “actual and substantial.” NRS 175.211(1) defines reasonable doubt and no longer includes the word “substantial.” NRS 175.211(2) provides that no other definition of reasonable doubt may be given to Nevada juries. The instruction given was erroneous, but did not constitute substantive or constitutional error requiring reversal. Hutchins v. State, 110 Nev. 103, 112, 867 P.2d 1136, 1142 (1994).
 

 CONCLUSION
 

 The prosecutor committed misconduct when he stated before the jury that a witness for the State had been intimidated. The district court erred in finding Meek’s counsel in contempt and fining him in the presence of the jury. The jury instruction on reasonable doubt was also erroneous. These errors alone may not be prejudicial enough to warrant reversal.
 

 However, reversible error occurred in regard to evidence of a prior bad act. First, the district court erroneously failed to hold a
 
 Petrocelli
 
 hearing to determine that the evidence was properly admissible. Second, the court erred in admitting the evidence. Third, the court erred in not giving the jury a limiting instruction regarding its proper use of the evidence. These errors were prejudicial. We therefore reverse and remand to the district court for retrial.