TROY ANTHONY FOSTER, Appellant, *v.* THE STATE OF
NEVADA, Respondent.

No. 42749

May 26, 2005                    111 P.3d 1083

[Rehearing denied July 8, 2005]

*Richard F. Cornell,* Reno, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *Richard A.
Gammick,* District Attorney, and *Joseph R. Plater III,* Deputy
District Attorney, Washoe County, for Respondent.

Before MAUPIN, DOUGLAS and PARRAGUIRRE, JJ.

## OPINION

*Per Curiam:*

In this appeal, we consider whether the district court properly denied appellant Troy Anthony Foster's post-conviction petition for a writ of habeas corpus. Foster asserts a number of claims of error in connection with that denial. Primarily, we address Foster's claim that his Sixth Amendment right to the effective assistance of counsel was violated when his counsel on direct appeal failed to assign any error with regard to the trial court's finding that defense counsel violated *Batson v. Kentucky*.[1] During jury selection, the trial court sustained the State's *Batson* objection to peremptory challenges exercised by defense counsel, ruling that defense counsel had engaged in a pattern of gender discriminatory strikes. As a remedy for the *Batson* violation, the trial court reseated one of the women jurors who had been improperly peremptorily challenged by the defense.

[1]476 U.S. 79 (1986) (holding that it is impermissible to use a peremptory challenge to exclude a potential juror based on race). The term "*Batson* challenge" is often used generically to refer to discriminatory challenges for gender, as well as race. The *Batson* decision addressed only race discrimination, but the holding of *Batson* was expanded to include gender discrimination in the later case of *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127 (1994).

We conclude that the district court did not err in rejecting this and other claims presented in Foster's post-conviction habeas petition below, and we therefore affirm the district court's order denying Foster's petition. We nonetheless emphasize our strong preference that, in future cases, the trial courts of this State should follow the American Bar Association Standard recommending that all peremptory challenges to the jury venire should be exercised outside the presence of the venire.[2]

## FACTS AND PROCEDURAL HISTORY

The State charged Foster by information with four counts of sexual assault and one count of kidnapping. At his jury trial, testimony established that in December of 1997, while driving the victim from Reno to Carson City, Foster turned off the road, stopped the car, and sexually assaulted the victim. The victim testified clearly and unequivocally at trial that Foster ordered her out of her clothes, assaulted her both anally and vaginally, and forced her to perform oral sex. The victim also testified that Foster told her he was "into prostitution" and wanted to "pimp her out."

A friend of the victim testified that the victim was noticeably upset when Foster returned her to her home in Carson City after the assault. The friend also testified that she observed bite marks and bruises on the victim. A nurse specializing in sexual assault cases testified to finding bite marks on the victim's breasts, bruises on her legs, neck, and breast, a swollen and torn rectum, a bruised colon, and tears on the outside of her vagina. At the conclusion of the trial, the jury found Foster guilty of three counts of sexual assault and acquitted him of one count of sexual assault and one count of kidnapping.

Foster appealed his conviction to this court, enumerating five assignments of error.[3] This court rejected those contentions and affirmed his conviction, concluding in part that the evidence presented at trial was "more than sufficient" to sustain the jury's verdict.[4] Foster then filed a timely post-conviction petition for a

---

[2] *See ABA Standards for Criminal Justice: Discovery and Trial by Jury* 15-2.7(a) (3d ed. 1996).

[3] On direct appeal, Foster's appellate counsel argued: (1) there was insufficient evidence to support the conviction, (2) the repeated canvass of Foster as to his right to testify impaired his ability to knowingly and intentionally waive his right, (3) the trial court erred in not conducting a hearing into an incident where a juror may have learned of Foster's in-custody status during trial, (4) an improper "reasonable doubt" jury instruction impermissibly reduced the State's burden of proof, and (5) the trial court erred in not giving the two jury instructions proffered by the defense.

[4] *Foster v. State,* Docket No. 32872 (Order Dismissing Appeal, January 26, 2000).

writ of habeas corpus in the district court, claiming ineffective assistance of both trial and appellate counsel. The district court appointed counsel to represent Foster and conducted an evidentiary hearing. On January 28, 2004, the district court entered an order rejecting all of Foster's claims and denying the petition. This appeal follows.

## DISCUSSION

### Standards of review

"A claim of ineffective assistance of counsel presents a mixed question of law and fact, subject to independent review."[5] The key to evaluating an ineffectiveness claim is whether the proper functioning of the adversarial process was so undermined by counsel's conduct that the reviewing court cannot trust that the trial produced a just result.[6]

Under the test established in *Strickland v. Washington*,[7] in order to prevail on a claim of ineffective assistance of counsel, a claimant must make two showings. "First, [a claimant] must show that counsel's performance was deficient,"[8] *i.e.,* that counsel's representation fell "below an objective standard of reasonableness."[9] The inquiry on review must be whether, in light of all the circumstances, counsel's assistance was reasonable.[10] This court has recently held that a habeas corpus petitioner must prove the disputed factual allegations underlying his ineffective assistance of counsel claims by a preponderance of the evidence.[11]

Second, a claimant must show that counsel's "deficient performance prejudiced the defense."[12] Specifically, the claimant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[13]

[5]*Evans v. State,* 117 Nev. 609, 622, 28 P.3d 498, 508 (2001).

[6]*Strickland v. Washington,* 466 U.S. 668, 686 (1984).

[7]*Id.* at 687.

[8]*Id.*

[9]*Evans,* 117 Nev. at 622, 28 P.3d at 508.

[10]*Strickland,* 466 U.S. at 688.

[11]*Means v. State,* 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004).

[12]*Evans,* 117 Nev. at 622, 28 P.3d at 508.

[13]*Strickland,* 466 U.S. at 694.

"Judicial review of [counsel's] representation is highly deferential . . . ."[14] To fairly assess counsel's performance, "[t]he reviewing court must try to avoid the distorting effects of hindsight and evaluate the conduct under the circumstances and from counsel's perspective at the time."[15] A "district court's purely factual findings regarding a claim of ineffective assistance of counsel are entitled to deference on subsequent review by this court."[16] In addressing ineffective-assistance-of-counsel issues, this court has stated that "a tactical decision . . . is 'virtually unchallengeable absent extraordinary circumstances.' "[17] Additionally, the court need not consider both prongs of the *Strickland* test if the petitioner makes an insufficient showing on either prong.[18]

A defendant's "constitutional right to effective assistance of counsel extends to a direct appeal."[19] This court reviews claims of ineffective assistance of appellate counsel under the *Strickland* test; in order to establish prejudice based on deficient assistance of appellate counsel, the petitioner must show that the omitted issue would have had a reasonable probability of success on appeal.[20] "Appellate counsel is not required to raise every non-frivolous or meritless issue to provide effective assistance."[21] Appellate counsel is entitled to make tactical decisions to limit the scope of an appeal to issues that counsel feels have the highest probability of success.[22]

## Batson ruling and remedy

Foster contends that the district court erred in rejecting his claims that his trial counsel was ineffective for failing to properly object to the trial court's *Batson* decision and remedy and that his appellate counsel was ineffective for failing to assert any claims of error on appeal with respect to the trial court's resolution of the *Batson* issue. We disagree.

---

[14]*Evans,* 117 Nev. at 622, 28 P.3d at 508.

[15]*Id.*

[16]*Lara v. State,* 120 Nev. 177, 179, 87 P.3d 528, 530 (2004).

[17]*Doleman v. State,* 112 Nev. 843, 848, 921 P.2d 278, 280-81 (1996) (quoting *Howard v. State,* 106 Nev. 713, 722, 800 P.2d 175, 180 (1990)).

[18]*Strickland,* 466 U.S. at 697.

[19]*Kirksey v. State,* 112 Nev. 980, 998, 923 P.2d 1102, 1113 (1996).

[20]*Lara v. State,* 120 Nev. 177, 183-84, 87 P.3d 528, 532 (2004) (citing *Kirksey,* 112 Nev. at 998, 923 P.2d at 1114).

[21]*Id.* at 184, 87 P.3d at 533.

[22]*Id.*

During jury selection, Foster's counsel exercised peremptory challenges to five women in the jury venire, prompting a *Batson* challenge from the prosecutor. A hearing was held in chambers outside the presence of the jury. After finding a pattern of gender discriminatory strikes by defense counsel, the trial court considered reseating the last woman juror, the only one of the challenged women remaining in the courthouse. After a discussion with counsel, the judge announced that instead she would dismiss the entire venire and start jury selection over.

Foster's counsel objected, stating he did not think it was fair to Foster to strike a venire that included an African-American male, which in counsel's opinion was a rarity in that court. Foster's counsel wanted the same venire, but he also did not want the last woman juror reinstated, citing possible bias because the juror was aware that the defense had exercised a peremptory challenge striking her from the panel. The trial court ruled that Foster's counsel "couldn't have it both ways," and gave the defense the option of either choosing an entirely new venire, or utilizing the same venire with the woman juror at issue reseated with a curative instruction. After consulting with Foster, defense counsel chose to keep the venire, but preserved his objection to reinstating the woman juror on the record. The State concurred with the decision to reinstate the juror instead of selecting an entirely new venire. It is not clear from the record before this court if a curative instruction was ever given to the reseated juror.

### *Counsel's response to the finding of purposeful discrimination*

The record clearly establishes that Foster's trial counsel did object to the trial court's decision and remedy. Thus, Foster's claim that his trial counsel was ineffective for failing to properly object to the trial court's decision is belied by the record. Moreover, we conclude that Foster has failed to establish that the district court erred in finding a pattern of gender discriminatory strikes against women in the venire or in reinstating the last juror as a remedy for the *Batson* violation. Thus, Foster has failed to demonstrate prejudice sufficient to establish that he is entitled to relief on his claims of ineffective assistance of trial counsel.

It is impermissible to use a peremptory challenge to exclude a potential juror based on race[23] or gender.[24] In determining whether

---

[23]*Batson v. Kentucky,* 476 U.S. 79 (1986).

[24]*U.S. v. De Gross,* 913 F.2d 1417 (9th Cir. 1990); *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127 (1994); *Libby v. State,* 115 Nev. 45, 975 P.2d 833 (1999).

peremptory challenges have been used in a discriminatory manner, the complaining party "must [first] make a prima facie showing of intentional discrimination."[25] Next, the party accused of discriminatory challenges must offer a gender or race-neutral explanation for striking the jurors.[26] The trial court must then decide whether the complaining party has carried his burden of proving purposeful discrimination.

Our review of the record reveals that the trial court properly considered the State's *Batson* challenge under this three-step analysis and conducted a thorough canvass of defense counsel's reasons for striking the challenged women. Such findings are given great deference on appeal,[27] and we discern no legal error or abuse of discretion in the trial court's finding of purposeful discrimination. Thus, Foster has not shown the prejudice necessary to establish any entitlement to relief on his claims relating to his appellate counsel's failure to challenge the trial court's finding of discrimination; such a challenge would not have had a reasonable probability of success on appeal.

### *The decision to reinstate the juror*

This court has not previously addressed the appropriate remedy for a *Batson* violation, and we decline to engage in a comprehensive analysis of that issue in the context of this post-conviction appeal. We address the merits of the trial court's decision to reinstate the juror in question here solely for the purpose of determining whether Foster can demonstrate the prejudice necessary to establish that he is entitled to relief on his claim of ineffective assistance of appellate counsel. In so doing, we conclude that, under the singular facts and circumstances of this case, the trial court did not err in reinstating the challenged juror as an appropriate remedy. We reserve for another more appropriate case a more definitive decision of what remedy may best serve to vindicate in Nevada courts the multiple interests that *Batson* protects.[28]

---

[25]*Walker v. State,* 113 Nev. 853, 867, 944 P.2d 762, 771 (1997) (citing *Batson,* 476 U.S. at 96).

[26]*Id.* (citing *Hernandez v. New York,* 500 U.S. 352, 360 (1991) (plurality opinion) ("At this step of the inquiry, the issue is the facial validity of the [accused party's] explanation.")).

[27]*Id.* at 867-68, 944 P.2d at 771-72.

[28]The holding in *Batson* serves to protect three interests that are threatened by discriminatory jury selection: (1) the defendant's right to equal protection, (2) the excluded juror's equal protection rights, and (3) the public's confidence in the fairness of our system of justice. 476 U.S. at 86-87.

The *Batson* decision expressly left to state courts "how best to implement" its holding. It expressed no view:

> whether it is more appropriate in a particular case, upon a finding of discrimination . . . , for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire.[29]

In implementing *Batson,* the states have generally followed one of three different approaches.[30] Some jurisdictions require the trial courts to disallow a peremptory strike made in violation of *Batson* or to reseat the improperly stricken juror.[31] Other jurisdictions require the trial courts to discharge the venire and commence jury selection anew from an entirely new venire.[32] "The majority of courts, however, have delegated to the discretion of the trial judge the determination of the appropriate remedy for a *Batson* violation."[33] Thus, the remedy that the trial court selected in Foster's case has been held to be an appropriate means of addressing a *Batson* violation in other jurisdictions.[34]

In the instant case, the trial court offered counsel the choice of starting over with an entirely new venire, or of continuing with the same venire with the last woman juror reinstated to the panel. Trial counsel's objection to the first option, made after consultation with his client, was in the nature of a tactical decision, and this court will not second-guess counsel's strategic decision. As for the trial court's ultimate decision to reinstate the challenged juror, Foster failed to demonstrate in the post-conviction proceedings

---

[29]*Id.* at 99-100 n.24 (citations omitted).

[30]*See Jones v. State,* 683 A.2d 520, 525 (Md. 1996) (affirming a trial court's decision to reseat jurors improperly challenged by the defense and providing a comprehensive review of the remedies applied in other jurisdictions).

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*See, e.g., Jones,* 683 A.2d 520 (concluding that reseating improperly challenged jurors was an appropriate remedy for a *Batson* violation committed by defense counsel). Notably, in the instant case, the district court relied on the California Supreme Court decision in *People v. Willis,* 43 P.3d 130, 137 (Cal. 2002), which held that such action is a permissible remedy to a successful *Batson* challenge. Following *Willis,* the California Court of Appeals affirmed a trial court's decision to reseat an improperly challenged juror. The court of appeals held that such an alternative remedy is only proper when the conventional remedy of dismissing the entire venire serves only to reward the offending party, and when the complaining party assents. *People v. Overby,* 22 Cal. Rptr. 3d 233, 236 (Ct. App. 2004).

below that merely because the juror at issue was aware that the defense had exercised a peremptory challenge against her, she harbored any animus or bias towards the defense.

As the district court found in its order denying Foster's postconviction claims, "[t]here is nothing in the record to suggest that the female juror who was peremptorily challenged and ultimately retained on the panel exhibited any bias or prejudice for or against either party." The district court also observed that the trial court proceedings involving the *Batson* challenge were conducted outside the presence of the venire, and the juror at issue was instructed merely to wait while the court addressed some "procedural issues." Further, the trial court provided general instructions to the venire as to how challenges were made and subsequently admonished the empanelled jury repeatedly to keep an open mind and to not form or express any opinion on the case. In sum, we conclude that, under the particular circumstances of this case, the reinstatement of the juror in question did not offend Foster's rights under the United States or Nevada Constitutions. Thus, Foster has not established the prejudice necessary to entitle him to relief on his claim that his appellate counsel was ineffective for failing to assign error on direct appeal with respect the trial court's resolution of the *Batson* issues; such assignments of error would not have had a reasonable chance of success on appeal.

We emphasize, however, our strong preference that in accordance with the American Bar Association Standards, the trial courts of this state should assure that all peremptory challenges during jury selection are exercised and considered outside the presence of the jury venire.[35] Additionally, if a juror in such a situation is reseated and a curative instruction is requested, that curative instruction should be given on the record for purposes of review.

*Defense theory of accidental anal penetration*

Foster claims his trial counsel was ineffective for not investigating and providing more detailed evidence of the defense of accidental

---

[35]Standard 15-2.7(a) of the *ABA Standards for Criminal Justice: Discovery and Trial by Jury* provides:

> All challenges . . . should be addressed to the court outside of the presence of the jury, in a manner so that the jury panel is not aware of the nature of the challenge, the party making the challenge, or the basis of the court's ruling on the challenge.

As the commentary to this standard suggests, such a procedure avoids any potential risk that counsel's remarks may offend the challenged juror.

anal penetration. Foster also claims in this respect that his counsel was deficient for not using photos of the car, as well as Foster's own testimony, to effectively rebut the victim's version of events. Foster's arguments are based on the flawed premise that the only reasonable defense theory was "accidental anal penetration." We conclude that defense counsel's tactical, strategic decisions in these respects were not unreasonable. Defense counsel could have reasonably concluded that the jury would have rejected as improbable any claim that injuries as severe as the victim's resulted from accidental contact. Instead, defense counsel reasonably elected to present evidence supporting the defense theory that the victim consented.

### Trial counsel's advice that Foster not testify

Foster asserts that the district court erred in rejecting his claim that trial counsel was ineffective in urging Foster to waive his Sixth Amendment right to testify. We disagree.

Near the end of the four-day trial, the trial court canvassed Foster to assure that he understood his constitutional rights to testify or not. Foster asked for more time to decide. The judge allowed Foster to consider the matter overnight. The following day, outside the presence of the jury, defense counsel told the court that Foster had decided to testify against the advice of counsel. The judge once again canvassed Foster, who indicated he understood his rights. Just before the jury was brought in, Foster's counsel told the judge that Foster had changed his mind and would not testify. Once again Foster was canvassed. Defense counsel was granted a five-minute recess to discuss the situation with Foster. After the recess, Foster advised the court that his decision was not to testify.

In rejecting Foster's claim on direct appeal that the repeated canvassing conducted by the district court impaired his ability to knowingly and intentionally waive his right to testify, this court observed that both the district court and defense counsel "exhibited patience and caution in dealing with" Foster's decision whether to exercise his right to testify.[36] We further concluded that neither the district court nor defense counsel influenced Foster's decision.[37] Our holding in this respect is the law of the case.[38] Foster was fully informed regarding his rights and his decision not to testify was his and his alone. Under these circumstances, where Foster elected of his own volition not to testify, he cannot be heard to complain that his counsel was ineffective in this respect.

---

[36]*Foster v. State,* Docket No. 32872 (Order Dismissing Appeal, January 26, 2000).

[37]*Id.*

[38]*Hall v. State,* 91 Nev. 314, 535 P.2d 797 (1975).

In addition, we note that had Foster testified, he would have been subject to potentially damaging cross-examination by the State with respect to his prior felony conviction and his involvement in pimping and prostitution. Moreover, given the implausibility of Foster's claim of accidental anal penetration, counsel could have reasonably concluded as a tactical matter that Foster's testimony would have been more harmful than helpful. We therefore conclude that the district court properly rejected this claim.

### Theory of the case jury instruction

Foster claims that his trial counsel was ineffective for failure to seek a proper theory of the case jury instruction on "reasonable mistake of fact as to consent." In fact, Foster's trial counsel proposed such an instruction.[39] The district court did not accept the instruction, however, finding instead that other instructions adequately instructed the jury on this issue. This court affirmed the district court's ruling in Foster's direct appeal, and the decision on that point is the law of this case.[40] Thus, Foster cannot demonstrate prejudice, *i.e.,* that but for counsel's alleged error, the result of the trial would have been different. Moreover, the record demonstrates that Foster's counsel made reasonable efforts to include theory of the case jury instructions, and as such, his performance did not fall below an objective standard of reasonableness. Accordingly, the district court did not err in rejecting this claim.

### Prior uncharged misconduct

Prior to trial, counsel for Foster moved to have witness statements about Foster's alleged ties to prostitution excluded. The district court denied the motion, citing to NRS 48.035 and finding the evidence to be admissible because it was significantly intertwined with the facts that formed the basis of the alleged crime.[41]

In his post-conviction petition, Foster claimed that his trial counsel was ineffective for not requesting a limiting instruction respecting the evidence of pimping and prostitution as prior un-

---

[39]The tendered instruction read as follows: "If you the jury decide that it was reasonable, from the point of view of Mr. Foster, to conclude that [the victim] had manifested consent, you must find him not guilty."

[40]*Hall v. State,* 91 Nev. 314, 535 P.2d 797 (1975).

[41]NRS 48.035(3) provides:

Evidence of another act or crime which is so closely related to an act in controversy or a crime charged that an ordinary witness cannot describe the act in controversy or the crime charged without referring to the other act or crime shall not be excluded, but at the request of an interested party, a cautionary instruction shall be given explaining the reason for its admission.

charged misconduct. Foster further claimed that his appellate counsel was ineffective for failing to challenge on appeal the district court's ruling admitting this evidence.

Foster's trial pre-dated our recent decision in *Tavares v. State,* which held that a limiting instruction is required unless the defense declines such an instruction for strategic purposes.[42] Prior to *Tavares,* unless requested by the defense, no limiting instruction was required absent exceptional circumstances.[43] This court found such exceptional circumstances in *Meek v. State,*[44] where the prosecution in a sexual assault trial presented the testimony of the victim of a prior uncharged sexual assault by the defendant.[45] This court held that the district court erred by failing to conduct a *Petrocelli* hearing, erred in admitting the evidence absent clear and convincing evidence of its veracity, and erred in failing to give a jury instruction as to the proper, limited use of the testimony.[46]

Foster cites *Freeman v. Class*[47] for the proposition that counsel's failure to request an appropriate instruction is deficient conduct and is prejudicial where the evidence of guilt is not overwhelming. But in *Freeman,* as in *Meek,* the evidence admitted without a cautionary instruction was the central evidence in convicting the defendant.[48]

Here, the decision of Foster's counsel not to seek a limiting instruction was a tactical one. The record shows that during a chambers conference at trial, Foster's counsel renewed his objection to the prior uncharged misconduct evidence and stated that he did not want to draw the jurors' attention to that evidence by objecting in open court. That objection was made to preserve Foster's right to appeal the court's decision on the motion in limine. Certainly defense counsel had a right to request a limiting instruction, but there was no requirement that such an instruction be given absent a request by counsel.[49] We conclude that declining to request a limit-

---

[42]117 Nev. 725, 731, 30 P.3d 1128, 1132 (2001).

[43]*Champion v. State,* 87 Nev. 542, 490 P.2d 1056 (1971) (plain error to not give limiting instruction, where testimony by addict-informer was central to case against defendant, even though not requested by defense counsel).

[44]112 Nev. 1288, 930 P.2d 1104 (1996).

[45]*Id.* at 1291-92, 930 P.2d at 1106.

[46]*Id.* at 1295, 930 P.2d at 1109.

[47]95 F.3d 639, 641-42 (8th Cir. 1996).

[48]In *Freeman,* the prosecution dropped stolen car charges in exchange for the testimony of a codefendant. Under state law, such testimony entitled the defendant to instructions on both corroborating evidence and accomplice testimony. The court found that defense counsel's failure to request such instructions "was highly prejudicial" to the petitioner and there was a "strong probability that the result of the trial would have been different" had the jury been properly instructed. *Id.*

[49]*See* NRS 48.035(3).

ing instruction here was a reasonable tactical decision by counsel and did not fall below an objective standard of reasonableness. Further, Foster has not shown any prejudice from the lack of a limiting instruction. There was abundant evidence of guilt, apart from the evidence of Foster's prior uncharged misconduct, and the evidence of prior misconduct was not central to the jury's finding of guilt. Given all the evidence, there is not a reasonable probability that the result of the proceeding would have been different even if a limiting instruction had been given.

Similarly, we conclude that Foster did not demonstrate prejudice resulting from appellate counsel's decision to omit any issues on appeal relating to the admission of this evidence. Given the other abundant evidence of Foster's guilt, such issues would not have had a reasonable probability of establishing reversible error. The district court did not err in rejecting these claims.

*Psychosexual reports*

At the sentencing hearing, the trial court acknowledged receipt of a psychosexual evaluation attached to a presentence investigation report by the Division of Parole and Probation, as well as a second psychosexual evaluation provided by the defense. Foster told the court he had asked to participate in the evaluations, against the advice of counsel. Also against the advice of counsel, Foster had requested the evaluations be provided to the court. Foster was sentenced to serve three consecutive terms of life with the possibility of parole.

Foster argues his trial counsel was ineffective for failing to move for exclusion of the psychosexual reports introduced at sentencing. However, Foster himself testified that, against the advice of counsel, he insisted on participating in both evaluations, and in having both reports provided to the trial court. Under these circumstances, Foster will not be heard to complain about his trial counsel's performance. Additionally, at the sentencing hearing, Foster's counsel attempted to portray Foster's insistence on participating in the evaluations and having them submitted to the court in a positive light, speaking to Foster's openness and willingness to cooperate with the court. The district court did not err in rejecting this claim.

## CONCLUSION

Foster's contentions that the district court erred in rejecting his claims of ineffective assistance of trial and appellate counsel are without merit. Therefore, we affirm the order of the district court denying Foster's post-conviction petition.