MICHELLE COLON a/k/a MICHELLE WHITE, Appel-
lant, v. THE STATE OF NEVADA, Respondent.

No. 26617

April 24, 1997 938 P.2d 714

*Steven G. McGuire,* State Public Defender, and *Timothy
O'Toole,* Appellate Deputy Public Defender, Carson City, for
Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Noel S.
Waters,* District Attorney, and *Melanie L. F. Bruketta* and *Anne
M. Langer,* Deputy District Attorneys, Carson City, for Respond-
ent.

## OPINION

By the Court, ROSE, J.:

The State charged Michelle Colon (Colon) with selling meth-amphetamine to narcotics investigator Robert Meyers (Meyers)

on two occasions. In both transactions, Meyers requested the drugs, Colon took the money from Meyers, procured the drugs from her source, and gave the drugs to Meyers. Colon asserted the procuring agent defense and claimed that she received none of the drugs or money from the transactions. However, because the State established that on each occasion Colon took and apparently used a portion of the methamphetamine, the jury was at liberty to then reject the procuring agent defense. We affirm the two drug sales convictions because there was evidence to establish that Colon was not acting solely for Meyers, the recipient, in these transactions.

## FACTS

Meyers was a narcotics investigator for the Nevada Division of Investigations. He was not a drug recognition expert, but was familiar with recognizing persons under the influence of narcotics. An informant introduced Meyers to Colon at Colon's apartment in Carson City on July 22, 1993. Also present at the apartment was Colon's boyfriend, Jim. The informant asked Colon to obtain for Meyers a sixteenth of an ounce of methamphetamine for $100. Colon agreed and tried unsuccessfully to contact a source by telephone. Meyers then drove Colon and the informant to the Indian Hills area to obtain the drug. Colon told Meyers that she had recently bailed her source out of jail after he had been arrested for possession of methamphetamine. She had been dealing with this source for some time. In looking for the source, Colon had Meyers drive to a house where she said a quantity of marijuana was being grown indoors. Meyers testified that police later arrested the owner of the house.

Colon finally located her source, who told her to meet him alone at a grocery store. As Meyers drove Colon to the grocery store, they saw Jim walking, and Colon said that she had sent him to get some marijuana for some other people. According to Meyers, Jim "was walking right towards the location where the marijuana grow was." When Meyers dropped Colon off at the store, Colon said that she wanted a pinch of the methamphetamine.[1] When he indicated some reluctance, she said that if she

---

[1]This case involves the purchase and use of methamphetamine, a very dangerous and addictive illegal drug which the dissent has categorized with astonishing naivete as an "unprescribed mood-elevator." While elevation of mood is one effect of methamphetamine use, other effects are confusion, depression, inability to sleep, convulsions, delusions, hallucinations, and delirium. These symptoms may resemble those of paranoid schizophrenia. 3B Roscoe N. Gray, M.D. & Louise J. Gordy, M.D., LL.B., Attorneys' Textbook of Medicine § 103.13(5) (3d ed. 1993). The state Board of Pharmacy has recognized the dangerousness of methamphetamine and has

did not get a pinch, she would not get the drug for him. Meyers told her to do what she had to do and gave her $100. He estimated that a sixteenth ounce of methamphetamine was selling for $80 to $100 at that time. Meyers left the grocery store and picked Colon up a little later. She produced some methamphetamine and said, " 'Killer, this is killer. Smell it.' " It appeared to Meyers from a change in Colon's demeanor that she had ingested some of the methamphetamine; she seemed happier, more active, and more talkative. He also thought she had used some because the amount she gave him appeared to be quite a bit less than a sixteenth ounce. She asked for another pinch, but he said that it was short already and that maybe she could have more another time if he made a larger purchase. Colon told Meyers that if he wanted more methamphetamine, her source could bring it to her apartment that afternoon.

Meyers went to Colon's apartment again in mid-August of 1993 and tried to get more information about the indoor marijuana in Indian Hills. Another man was present at that time, and Meyers testified he wanted to obtain a half ounce of marijuana. Defense counsel objected on the grounds that the testimony was hearsay and irrelevant character evidence. The district court ruled that no hearsay had been presented and that the evidence was admissible under NRS 48.045(2), which permits evidence of other bad acts to show intent, preparation, and proof of a motive. Meyers testified that the man who was present left to use a pay phone to try to locate some marijuana. Colon then asked Meyers if he wanted to buy more methamphetamine. He said maybe later. Meyers left and was to return later that day to give Colon and the man a ride downtown, but Meyers's supervisor did not allow him to return out of a concern for safety.

Meyers went to Colon's apartment again on August 31, 1993, and asked about buying an eighth ounce of methamphetamine, an "eight-ball." Meyers testified that an eighth ounce would be about seven grams and that the weight actually purchased is nearly always slightly lighter. Colon said an eighth ounce would cost $200. Also present at the apartment were Jim, Colon's sister, and two other men, Sam and Mike. Meyers returned later, and it appeared to him that the people in the apartment had just ingested methamphetamine; Colon was much more hyper than before. Jim told Meyers that the eight-ball would cost $225, and Meyers agreed and gave Colon $240. He did not expect to get change. Colon left with Sam and did not return for quite some time. After they returned, she took Meyers to a bedroom and handed him

classified the drug as a Schedule II narcotic. NAC 453.520. Schedule II drugs have a high potential for abuse, which may lead to severe psychological or physical dependence. NRS 453.176.

some methamphetamine. Meyers became upset because it was well short of an eight-ball. When he asked if Colon had taken half of it, she got angry and left the room. Meyers asked Sam if they had used half of it, and Sam said, "Yes." Jim then came in and told Meyers that he would make it right and that Meyers should deal with him from that point on. Meyers did not get any of the $240 back.

Meyers returned to Colon's apartment in September but was not able to buy any drugs from her. She was later arrested and charged with two felony counts of selling a controlled substance.

On cross-examination of Meyers at the trial, defense counsel established that an eighth of an ounce weighs about three and a half grams, not seven. Meyers also explained that the amount of drugs purchased from street dealers was often less than the agreed upon amount because the dealer often takes some of the drugs for personal use before handing them to the buyer. Meyers admitted that the authorities had never arrested Colon's source or sources for the methamphetamine and had never ascertained that Colon had kept any of the purchase money provided to her by Meyers.

On redirect examination, the prosecutor asked why Meyers had agreed to some extent with defense counsel that the investigation had failed. Meyers responded that

> as far as "failed," our goal is to start as high as we can and go up. If we have to start on the bottom—what we want to do is go up, meaning that we would arrest Ms. Colon and give her the opportunity to tell us her source, and take me or another undercover agent back to this source.
>
> Q [PROSECUTOR] In fact, you guys did that, didn't you?
>
> [DEFENSE COUNSEL]: Objection. I didn't open the door to post-arrest or post-incarceration investigations. It hasn't been asked, and it's not relevant.

After a discussion sidebar, the prosecutor continued:

> Q Investigator Meyers, let me ask the question again: In fact, you, "you" meaning the Tri-Net Task Force, gave Ms. Colon the opportunity to cooperate, did you not?
>
> A My understanding—I was not present, but my under-standing was—
>
> [DEFENSE COUNSEL]: Objection. There's no founda-tion as to him being present. It's not relevant.
>
> THE COURT: If he has no personal knowledge because of participation, then I am sustaining the objection.
>
> [PROSECUTOR] Who at the task force was involved in dealing with Michelle?
>
> A I believe Investigator Heinrich, possibly Investigator

VanDalinda. Investigator Heinrich was. Investigator Howell was for sure. Supervisor Milby was, I'm sure.

Q You do have knowledge then that there was follow-up, is what I'm getting at, done with Michelle to try and get to her source; is that correct?

A That was my understanding, yes.

Colon did not appear for the second and final day of trial; no comment regarding her absence was made to the jury before it rendered a verdict. Defense counsel did not object to any of the jury instructions or offer any additional instructions.

In closing argument, the prosecutor asserted: "If we couldn't get to her source, the fault lies somewhere besides with the State . . . ." He argued that "there is no other evidence in this case but that Michelle Colon sold these drugs to Investigator Meyers" and that defense counsel "accepted Mr. Meyers's assertions about what Ms. Colon had said about the sequence of events, about the drug transactions and the agreements and amounts. All of those things were accepted. They were uncontroverted."

In his closing argument, defense counsel stressed to the jury that the investigation "did not result in the arrest or conviction of any of the people that were selling the drugs, but resulted in the arrest of Michelle Colon, and in that regard, Michelle Colon is left holding the bag . . . ." He argued that Colon had procured and possessed the drugs but was not guilty of selling them.

In final closing argument, the prosecutor said:

> Are there facts which establish beyond a reasonable doubt that she sold drugs to Investigator Meyers? Yes. Why?
>
> She's an out-of-work addict. She's a person who needs to support her habit, her use. How else is she going to do it, ladies and gentlemen? Where's the money going to come from?

He also stated: "She never denied using the methamphetamine on either occasion."

Jury instructions placed the burden on the State to prove beyond a reasonable doubt that Colon was not a procuring agent. The jury found Colon guilty of two counts of sales of a controlled substance. The district court sentenced her to two consecutive six-year prison terms.[2]

---

[2]The dissenting opinion states that this court is going in an unenlightened and socially counterproductive direction by affirming Colon's conviction, the effect of which is that Colon will have to serve twelve years in jail. Setting aside the concerns voiced in the dissenting opinion, we note that it is the function of the Legislature, not this court, to implement social policy and changes in the way drug users are punished. Our function is to enforce the law as made by the Legislature when that law is clear and unambiguous, which we have done in this instance.

## DISCUSSION

*Whether the evidence was insufficient to prove that Colon was a seller, rather than procuring agent, of the drugs*

In the case of Roy v. State, 87 Nev. 517, 489 P.2d 1158 (1971), we established the procuring agent defense when we held that it is fundamental that a person cannot be found guilty of being a seller of narcotics when he or she has not acted for the supplier, but rather, solely for the recipient. *Id.* at 519, 489 P.2d at 1159. In several cases we have reaffirmed this defense. *See* Dent v. State, 112 Nev. 1365, 929 P.2d 891 (1996); Love v. State, 111 Nev. 545, 893 P.2d 376 (1995); Paul Andre B., A Minor v. State, 108 Nev. 368, 830 P.2d 1344 (1992). In *Love,* we further explained the applicability of this defense:

> Since *Roy,* we have established that the procuring agent defense in a prosecution for a sale of a controlled substance can be maintained only if the defendant was merely a conduit for the purchase and in no way benefited from the transaction. Thus, if a defendant receives part of the controlled substance involved in the transaction for his own use or any amount of money in consideration for the transaction, the defense of procuring agency is not available.

*Love,* 111 Nev. at 548, 893 P.2d at 378. Therefore, we must examine the record to determine if there was any evidence to show that Colon received part of the controlled substance for her own use or any money from the transactions.

Meyers testified that on July 22, 1993, before obtaining methamphetamine from her source, Colon demanded that she get a pinch of it. She stated that if she did not get a pinch, she would not procure the drug. Meyers also testified to a change in Colon's demeanor after she obtained the drug, which was consistent with her having used it. Finally, the amount of the drug was appreciably less than he had bargained for, and according to Meyers this was consistent with a street dealer taking some for personal use. Meyers testified that on August 31, 1993, he again received much less methamphetamine from Colon than he had paid her to obtain. When he confronted her and Sam, the man who helped her obtain the drug, with the apparently missing methamphetamine, Sam admitted that he and Colon had used some of it. Defense counsel did not object to evidence of Sam's out-of-court statement, and it was admissible against Colon as her coconspirator's statement, pursuant to NRS 51.035(3)(e).[3]

---

[3]NRS 51.035(3)(e) provides that a statement is not hearsay if it is offered against a party and is made "by a coconspirator of a party during the course and in furtherance of the conspiracy."

Meyers paid $240 and received no change in return, even though the price quoted was $225. It was reasonable for the jury to conclude that Colon and her colleagues retained this overpayment. Furthermore, the procuring agent defense does not apply when the defendant obtains drugs from a person with whom the defendant is associated in selling drugs. Hillis v. State, 103 Nev. 531, 536, 746 P.2d 1092, 1095 (1987). The State presented sufficient evidence that Colon was associated with the supplier in selling drugs in the first transaction.

The dissent claims that Colon was entrapped into selling drugs to Meyers. The defense of entrapment requires that the state lure someone into committing a crime he or she had no predisposition to commit. Hill v. State, 95 Nev. 327, 594 P.2d 699 (1979). However, evidence of a predisposition to sell a controlled substance will negate the entrapment defense. *Paul Andre B.,* 108 Nev. at 371, 830 P.2d at 1346. There was abundant evidence to show Colon's predisposition to sell, and this is probably why she did not raise the entrapment defense at trial.

The record supports a finding that Colon sold, not merely procured, the drugs in question and that the jury had ample evidence to reject the procuring agent defense.

*Whether evidence was improperly admitted*

Colon claims that most of the evidence and argument presented by the State at trial was intended solely to impugn her character. Colon's counsel did not object to most of the testimony and argument now challenged, and this court will only address the claimed errors if they rise to the level of plain error. Sterling v. State, 108 Nev. 391, 394, 834 P.2d 400, 402 (1992). Admission of evidence is within the trial court's sound discretion; this court will respect the trial court's determination as long as it is not manifestly wrong. Petrocelli v. State, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985). We must examine the evidence and arguments complained of to see if they amounted to plain error.

At several points in the trial, the State elicited testimony regarding a house in Indian Hills where marijuana was being grown. Defense counsel objected only once, and the objection apparently regarded Meyers's conversation with another man regarding a possible marijuana buy, not Meyers's reference to the indoor marijuana. The admission of this evidence was not plain or prejudicial error. Colon's knowledge of the marijuana was

arguably relevant to proving her role as a seller of drugs. The indoor marijuana was relevant to explain why Meyers approached Colon in mid-August seeking information on marijuana and to show that Colon brought up the subject of a methamphetamine sale without prompting by Meyers. The district court also thought NRS 48.045(2) permitted the receipt of these facts into evidence. The admission of this evidence was not plain error.

Colon also argues that testimony regarding the attempted marijuana buy with the man at Colon's apartment was irrelevant to her case and was used simply to prejudice her by showing that her friends engaged in drug deals. She argues that the prejudice was worsened by reference to the "safety concerns" which prompted Meyers not to return and drive the man downtown. However, this evidence was relevant to the procuring agent issue because it showed that Colon on her own brought up a possible methamphetamine sale. *See Hill*, 95 Nev. at 330, 594 P.2d at 701 (holding that evidence that defendant previously supplied marijuana rebutted procuring agent defense).

Colon claims that the only reason the State introduced evidence that she bailed a person arrested for drug possession out of jail was to show her bad character. However, the State showed that this person was Colon's supplier for the first drug transaction. The evidence was therefore relevant to show that Colon was not simply a procuring agent, but obtained the drugs from a person with whom she was associated in selling drugs. *See Hillis*, 103 Nev. at 536, 746 P.2d at 1095.

Colon contends that the prosecutor also erred by introducing the evidence discussed above without seeking a ruling under Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985). However, this evidence was clearly admissible because the State was required to disprove the procuring agency and that Colon had a predisposition to sell controlled substances. *See* Love v. State, 111 Nev. 545, 551, 893 P.2d 376, 379 (1995); Paul Andre B., A Minor v. State, 108 Nev. 368, 371, 830 P.2d 1344, 1346 (1992). A *Petrocelli* hearing was not required, and the prosecutor's comments on this evidence in closing argument were not error.

*Whether the prosecutor improperly elicited evidence of and commented on Colon's election to remain silent*

Colon contends that the State improperly commented on her right to remain silent by presenting evidence that she did not cooperate with police after she was arrested and by arguing that

her defense counsel had accepted Meyers's uncontroverted assertions.

Over objections by defense counsel, one of which was clearly sustained, the prosecutor in this case elicited testimony from Meyers to the effect that after arresting Colon, police had attempted without success to get her to cooperate and divulge the identity of her source for methamphetamine. Defense counsel did not object to the following remarks made during closing argument. The prosecutor argued: "If we couldn't get to her source, the fault lies somewhere besides with the State . . . ." He also argued that "there is no other evidence in this case" but that Colon sold the methamphetamine and that defense counsel "accepted" Meyers's assertions and that they were "uncontroverted." Finally, the prosecutor stated: "She never denied using the methamphetamine on either occasion."

The prosecution is forbidden to comment at trial upon a defendant's election to remain silent after being arrested. Morris v. State, 112 Nev. 260, 264, 913 P.2d 1264, 1267 (1996). Such comment is harmless beyond a reasonable doubt and does not require reversal if the prosecution made only passing reference to the defendant's post-arrest silence or if there is overwhelming evidence of guilt. Id. at 264, 913 P.2d at 1267-68.

The State argues that defense counsel opened the door to evidence of and comment on Colon's failure to cooperate by raising the issue of the State's failure to prosecute the person who supplied Colon with methamphetamine. While reference to her refusal to cooperate with police may have prejudiced her in the eyes of the jurors and made them less likely to give her the benefit of any doubt in regard to the selling charges, it was her counsel who raised the issue. It was not reversible error to admit such evidence in these circumstances.

In addition, the prosecutor went further during closing argument and argued that the defense had accepted Meyers's assertions and that those assertions remained uncontroverted. Colon argues that this was a clear reference to her failure to testify. However, it could also be a reference to Colon's refusal to answer when asked by Meyers if she had used some of the drug. The State's informant was present at the first transaction, and two of Colon's acquaintances were present at the second transaction. The prosecutor's reference to uncontradicted evidence did not necessarily implicate only Colon's failure to testify, especially if Colon declined to subpoena these people. Even if the comments

were understood to be referring to Colon, they were indirect references; overwhelming evidence of Colon's involvement in the drug transactions was presented, and Colon's testimony was not in issue since she did not testify. As such, reversal because of these comments is not warranted. *See* McCraney v. State, 110 Nev. 250, 256, 871 P.2d 922, 926 (1994).

## CONCLUSION

The evidence showed that Colon used a portion of the drugs she obtained for the narcotics investigator; therefore, she benefited from the transactions and did not act merely as a procuring agent. The State had the burden of proving the drug sales and disproving the agency defense beyond a reasonable doubt. The evidence that Colon knew of growing marijuana, that she bailed a man arrested for drug possession out of jail, and that a man at her apartment tried to obtain some drugs was admissible evidence necessary for the State to establish its case; it was neither irrelevant character evidence nor evidence of collateral offenses requiring a *Petrocelli* hearing before its admission. If any error was made by the prosecutor in commenting on the failure to refute certain evidence, it was harmless beyond a reasonable doubt.[4]

SHEARING, C. J., and YOUNG, J., concur.

SPRINGER, J., dissenting:

Appellant's statement of the case in her opening brief strikes me as being a rhetorical but still rather accurate portrayal of what this case is all about. Appellant's opening brief tells us that Ms. Colon's "conviction occurred in a familiar manner":

> An actual criminal comes forward and offers to help manufacture sales charges against a drug user in exchange for being allowed to escape accountability for [her] crimes;

> Police agree to the deal, approach the targeted user and ask her to procure drugs;

> Like all users, the target knows where to obtain drugs and complies with the request;

> The addict is charged with being a drug dealer, and is convicted after an unfair trial during which the State bombards the jury with a combination of conjecture, innuendo, prior bad acts, and personal attacks; . . . . The State obtains another valuable statistic in order to claim victory in the war on drugs.

---

[4]THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this matter.

Ms. Colon's principal argument[1] is that she was a procuring agent as a matter of law. This is a classic case of a defendant's being a procuring agent rather than the seller. All that Ms. Colon did was to buy drugs for an undercover police officer after he persistently urged her to do so. After being importuned by the officer to obtain drugs for him, she finally decided to do so as an accommodation to the officer, who had taken great pains to befriend her, solely for the purpose of persuading her to buy drugs for him. Ms. Colon correctly argues that the procuring agent defense was formulated for the purpose of preventing agents of the State from going out of their way to make drug *users* into drug *sellers* by the device of leading drug addicts into "selling" drugs to police officers. Ms. Colon also maintains that to condone the State's actions in this case would defeat the very purpose of the procuring agent rule. She is absolutely right.

As stated in Ms. Colon's brief, the State led Ms. Colon into a drug sale in the "familiar manner." It all started when Ms. Colon's co-tenant, one Cesar Bazzar, in jail facing drug charges, told authorities that he would give them some incriminating evidence about a certain methamphetamine user if they would give him favorable treatment. This was the start of an intense police investigation of Ms. Colon, the purpose of which was to convict Colon of selling rather than merely using drugs.

Michelle Colon is a rather pitiful drug addict who had become addicted to the use of "speed," methamphetamine. Her life history is a sad one. Because of severe child abuse, Ms. Colon was forced to run away from home when she was only twelve years old. She got married at fourteen and has three children. Ms. Colon has a low I.Q. and is borderline mentally retarded. It was

---

[1]This case is riddled with error; however, this dissent deals principally with Ms. Colon's contention that she was a procuring agent and not a "seller," as a matter of law. I do not want to leave unmentioned, however, the fact that the State introduced evidence of a number of prior, unsubstantiated "bad acts" on the part of Ms. Colon, without complying with *Petrocelli* and *Armstrong* procedures, and, more importantly, the fact that the prosecutor commented freely on Ms. Colon's silence (*i.e.*, the prosecutor's suggestion to the jury that by declining to testify, Ms. Colon "accepted Agent [Robert] Meyers' version of events"), and the prosecutor's misleading comment that Agent Meyers' testimony stood "uncontroverted." Armstrong v. State, 110 Nev. 1322, 885 P.2d 600 (1994); Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985). In a case like this one, where conviction is necessarily based entirely upon whether Ms. Colon took an unobserved "pinch" of the drugs she was procuring for Agent Meyers, these kinds of constitutional violations by the prosecution cannot be ignored and certainly cannot be said to be harmless. I do not make this the main thrust of my dissent, however, because I believe that the majority's decision constitutes a drastic and unhealthy erosion, if not elimination, of the procuring agent rule and that, consequently, my attention should be directed principally to the majority's distortion of the rule.

not very difficult for the undercover agent to lure her into getting drugs for him; and it is clear that she would not have been involved in buying the drugs in issue if she had not been enticed into it by Agent Robert Meyers.

Mr. Bazzar's willingness to betray his roommate to save his own skin initiated an intense police investigation of Colon. Hours of surveillance and the use of sophisticated electronic recording equipment were invested in trying to make a dope seller out of this retarded drug user/addict. It will be obvious to anyone who takes the time to read this record that what this mother of three needs is drug rehabilitation and not twelve years in prison at public expense.

After the police decided to use Mr. Bazzar to entice Ms. Colon into a drug-sales conviction, they equipped Mr. Bazzar with a recording device in the hope that he could set up Ms. Colon for some kind of drug sales charge. While "wired-for-sound," Mr. Bazzar asked his friend, Ms. Colon, if she would be able to get him a small amount of their drug of choice, methamphetamine. Ms. Colon made some telephone calls but was unable to find anyone who would provide Mr. Bazzar with the drug.

Unsuccessful in their attempt to use Mr. Bazzar to catch Ms. Colon in the act of obtaining drugs for her friend, the police set up a "sting" operation in which an undercover police agent, Agent Meyers, made the attempt to involve Ms. Colon in a drug transaction. Agent Meyers was eventually successful in inducing Ms. Colon to drive around with him and Mr. Bazzar (in an unmarked police vehicle) trying to find someone who would sell them a small quantity of methamphetamine ($100.00 worth). On a July 22, 1993, dope-seeking caravan trio's attempt was at first unsuccessful, but eventually Ms. Colon was able to locate, at a convenience store, a person who had previously fed her addiction. She was then able to buy a small quantity of the drug for Agent Meyers with the $100.00 that Meyers had given her.

Agent Meyers was not satisfied with this one transaction (perhaps because he realized at that point that Ms. Colon was clearly acting only as an agent for him, buying drugs *for* him and with *his* money). Agent Meyers no doubt realized that this transaction would not support a sales charge (although the jury in this case did convict for sales based on this transaction).

Drug Agent Meyers' next attempt to set Ms. Colon up as a "seller" of drugs was ventured on August 31, 1993, at which time Agent Meyers went to Bazzar's and Colon's apartment with the intention of persuading Ms. Colon to procure for him a small quantity of methamphetamine. Ms. Colon agreed to try to get Meyers some of the drug. Agent Meyers left the apartment and came back in about one-half hour. When Agent Meyers returned,

Ms. Colon agreed to go out and find some methamphetamine for her new friend, Drug Agent Meyers. Agent Meyers gave $240.00 to Ms. Colon to make the purchase for him. Ms. Colon returned to the apartment some time later and gave Agent Meyers his methamphetamine.

The two drug transactions outlined above present classic examples of the application of the so-called "procuring agent" defense. The procuring agent defense was devised by the courts to prevent the police from unjustifiably turning drug users into drug sellers in cases like this one. The general idea is that one cannot and should not be found guilty of being a "seller" when she/he has not acted for the supplier-vendor but solely for the buyer. Roy v. State, 87 Nev. 517, 519, 489 P. 2d 1158, 1159 (1971). Drug users in this state are subject to heavy penalties; but sellers are subject to much more severe penalties. It is simply unjust that an addict be punished as a seller unless the addict is actually involved in selling drugs. Ms. Colon might, possibly, have embezzled some of Agent Meyers' drugs, which he had entrusted to her, but certainly Ms. Colon did not *sell* any drugs to *anyone*. If, for example, Ms. Colon had sold her own methamphetamine to Agent Meyers, she would be guilty of a sales offense; however, in this case, the drugs were not hers to sell, they were Agent Meyers' drugs. All Ms. Colon was doing was taking Agent Meyers' money and acting as his agent in the *purchase*, not sale, of drugs *for* Meyers from a third person. Until today, the courts have universally recognized that such actions do not constitute a criminal sale of drugs.

To identify a defendant as a procuring agent and not as a drug seller the courts have imposed the following requirements:

1. The person who does the buying must be an agent of the State.

2. The buyer must request the defendant to procure drugs.

3. The drugs must have been obtained from a third person and cannot be the defendant's drugs.

4. The defendant must not have profited from the transaction.

All four of the foregoing requirements apply to the transactions in this case; still, after a jury trial, Ms. Colon was convicted of two drug sales. One sales conviction arose out the events on July 22, 1993, the day that she found someone at a convenience store who would sell drugs to Agent Meyers. The other sales conviction was based on the August 31, 1993, transaction in her apartment, after she had gone out to find someone who would provide Agent Meyers with the drugs that he was seeking.

It is very difficult to understand, given the clear application of the procuring agent defense to these facts, how a conviction could have resulted in this case. It is obvious that Agent Meyers was instigating Ms. Colon to buy drugs for him, and with Meyers' money. It is obvious that the drugs were obtained from third persons (the one at the convenience store and the person who provided the drugs for the sale in Ms. Colon's apartment). This being the case, the only way that the State could make a drug user into a seller was to try to show in some manner that Ms. Colon made a "profit" from the two transactions.

The State's position is that because Ms. Colon took a "pinch" of Agent Meyers' drug buy, she was making a "profit." First, it is quite clear that there is no proof beyond a reasonable doubt that she did, in fact, pilfer any of Agent Meyers' drug. Second, if Ms. Colon did "pinch" some of Agent Meyers' drugs, Ms. Colon cannot, in any sense of the word, be said to have made a "profit" merely by taking an unauthorized sample of the drugs that Agent Meyers bought.

The State's attempt to prove that Ms. Colon made some kind of profit in delivering Agent Meyers' drugs to him took the form of testimony by Agent Meyers that *in his opinion* Ms. Colon undoubtedly had cheated him—had not delivered what he had paid for. The State's reasoning seems to be that if Agent Meyers did not receive the full amount that he bargained for, then Ms. Colon must be the one who shortchanged him and, if she shortchanged him, she therefore "profited" from the transaction. Agent Meyers expressed his opinion that Ms. Colon had taken a "pinch" of the drug before delivering it to him, basing his opinion on an assumption that drug-users usually do this. There is, of course, no actual evidence that she shortchanged Agent Meyers in this manner; and the State's proof of this fact is based almost entirely on Agent Meyers' speculation that he "felt sure" that she had taken a "pinch." Agent Meyers bolstered his opinion that Ms. Colon must have pilfered a "pinch" of his methamphetamine by testifying that Ms. Colon appeared to be under the influence of methamphetamine, not remembering, apparently, that Ms. Colon was almost always under the influence.

The evidential problem with Agent Meyers' supposed failure to get the full measure of what he paid for (if this were actually the case—there is no competent evidence that it is) is that Agent Meyers admitted that "weight is always short in almost any drug deal." If Agent Meyers did in fact get less than he paid for, this would seem to be an expected state of affairs more likely traceable to the supplier than to the courier. The evidence does not adequately support the State's case against Ms. Colon. It is pure

conjecture as to whether the villain who "shorted" Agent Meyers was the supplier, other intermediaries, or Ms. Colon herself.

As for Agent Meyers' opinion that Ms. Colon was under the influence of methamphetamine, this is of very little probative value. Ms. Colon admitted that she was an addict and that she used the drug on frequent occasions; she used methamphetamines in Agent Meyers' presence, and the fact that she may or may not have been under the influence at one of the times she delivered Agent Meyers' drugs (another matter of pure conjecture) is virtually immaterial—she was frequently under the influence of this drug. Whether or not Ms. Colon might have diverted a "pinch" of Agent Meyers' methamphetamine is a matter of pure conjecture.[2] In the State's brief, it is argued that "Investigator Meyers *believed* that Ms. Colon took a pinch of the methamphetamines . . . ." (My emphasis.) Agent Meyers' *belief* is not enough to make a sales case against this retarded drug user.

As the majority opinion points out, the "State has the burden of proving the drug sales and disproving the drug agency defense beyond a reasonable doubt." The entire thrust of the State's proof is, as put by the majority, that "Colon took and *apparently* used a portion of the methamphetamine." (Emphasis added.) It is possible but unlikely that Ms. Colon did steal some of Mr. Meyers' drugs and did take the fateful "pinch" (defined as an amount that can be "compress[ed] between the tips of the finger and thumb." The Oxford Dictionary of English Etymology, 681 (Oxford University Press 1966, 1983)). Such possibilities, obviously, do not constitute proof beyond a reasonable doubt. I do not see how it can be said that the *fact* of her stealing Meyers' drugs by taking a

---

[2]As a makeweight to its "profit" argument the State argued in its brief that Ms. Colon's "cohort admitted they [sic] used the drugs that they [sic] had been given." On checking the State's argument in this regard I do find that Agent Meyers gave some testimony about a hearsay conversation that he had with an accomplice in this case ("cohort," if you will), a man by the name of "Sam." Agent Meyers was talking with Ms. Colon, and with Sam, when he confronted Ms. Colon on the "pinch" subject in this manner: " 'What did you do? Did you take half of this?' " According to Agent Meyers, this was Ms. Colon's reaction to his accusation: "And she exploded. She left the room. She just—I don't recall if she said anything or not. But she left the room."

At this point Agent Meyers "turned around to Sam," the accomplice, and said, " 'What did you guys do? Did you use half of this.' " According to Agent Meyers, Sam "did say 'Yes.' " to that question. I suppose it could be argued, as the State does, that a "cohort" might have admitted that *he* used some of the drug; but this is not credible evidence of Ms. Colon's having used the drug. In fact, when Ms. Colon was accused, she "exploded" and left the room. This to me is strong evidence of denial rather than an admission that Ms. Colon had in fact taken the infamous "pinch." If there were any "pinch[ing]" in this case, it was done by "Sam."

"pinch" was proven beyond a reasonable doubt; it is a matter of pure conjecture, based on what the drug agent claimed was a custom and practice among users of unprescribed methamphetamines. Even if Ms. Colon did embezzle[3] some of the drugs that Agent Meyers had entrusted to her, this certainly does not make her a seller of these drugs.

In sum, then, there is insufficient proof to show that Ms. Colon stole or embezzled Agent Meyers' drugs, and even if she did, such pilfering cannot be called a "profit." By adopting this "pinch"[4] exception to the procuring agent rule, the court has abrogated the rule and effectively eliminated the rule from our jurisprudence.

In many ways this is a fatuous case at both the trial and appellate level. It appears that tens of thousands of dollars have been expended in a procrustean effort to bend a common drug user-addict into being a drug trafficker.[5] Ms. Colon did not sell

---

[3] It is hard for me to understand how Ms. Colon's supposed pilfering of Agent Meyers' drug buy can be cast in terms of a "profit" to Ms. Colon. In the ordinary sense, a profit is the excess over cost gained by an owner who sells goods in a sales transaction. This definition is certainly not applicable here because the drugs were never owned by Ms. Colon. Title passed directly from the supplier to Agent Meyers when the drugs were delivered to Meyers' courier, Ms. Colon. One might stretch the meaning of profit if Agent Meyers has said something like, "If you buy these drugs for me, I will give you a portion," but that certainly was not what happened here. The very worst that happened here was that, *without Agent Meyers' permission,* Ms. Colon "pinched" (embezzled) a small portion of the drugs that Agent Meyers had entrusted to her. How a courier's pilfering of goods purchased for, and belonging to, her principal can be called a profit is very puzzling to me. This is like saying that the grocery delivery boy who pilfers out of a grocery bag is making a "profit" on the grocery sale. This is, indeed, a strange case.

[4] Anent to our presently announced "pinch" rule, I would note that a "pinch is, by definition an insubstantial or negligible quantity. It is hard for me to visualize just how much a "pinch" of a sixteenth of an ounce of powder might be, but it cannot be very much. If, as the maxim goes, the law is not concerned with trifles, it should not concern itself with whether Ms. Colon did or did not steal this twelve-years-in-prison "pinch." Still, if the majority insists on calling theft of a "pinch" a "profit" and that such a theft or embezzlement turns Ms. Colon from a drug user into a drug seller, it is clear to me that the procuring agent defense is a thing of the past. Anytime there is a drug transaction now, the drug agent will simply come into court and say that procuring agents always sample the wares and that, therefore, they must have stolen some of the drugs. Under our new "pinch rule," a procuring agent who snitches a "pinch" of the drug agent's purchase somehow becomes a seller instead of a mere thief.

[5] This case is an excellent example of the present need for a shift in anti-drug strategy and a move away from the kind of pursuit of nonviolent offenders that we witness in this case. The long-term incarceration of drug users who commit essentially victimless crimes is clogging our legal system

drugs; she did not *sell* anything; she *procured* drugs for the benefit of Agent Meyers and possibly stole a "pinch" of Agent Meyers' drugs on the way home. By pretense and artificial device unknown to the jurisprudence of any other state, this court has created a novel "pinch" rule and has done away with the traditional and well-supported procuring agent defense. All of this, in my opinion, is very ill-advised and contrary to the best interest not only of the people of this state but contrary to the interest and ends of law enforcement.

I see the consequence of the majority opinion to be such an erosion of the procuring agent defense as to encourage drug enforcement agents to enhance their drug sales conviction "stats" by targeting relatively harmless addicts and sending them to prison for long terms. I see every case in which an addict is coaxed into obtaining drugs for an undercover agent as turning into a long-term prison, drug *sales* transaction rather than being what it is, a possession case. All the State will need for a sales conviction in the future is the opinion of the undercover agent that addicts usually take a sample of the drugs they are procuring and that, therefore, a "profit" is made and a drug sales conviction is warranted in every case.

It seems to me that the court's decision today works to the disadvantage of law enforcement and, thus, to the disadvantage of us all. If the procuring agent defense is going to be eroded in this fashion, we are bound to see more and more cases of the kind that we are witnessing here. We will be seeing the win-loss statistics of the "war on drugs" artificially appear to be highly favorable to the "good guys" as long-term sentences are imposed on persons who are not involved in the marketing of drugs but only, sadly, are addicted to their use.

Today we send this mother of three off to prison because she is suspected of stealing a "pinch," a mite, from Agent Meyers' drug buy. We seem to have lost all sense of proportion. At a time when some enlightenment seems to be on the horizon, when, in the urban areas we are moving toward education and "drug courts" as a way of dealing with drug addicts, the authorities in the First Judicial District and this court are going in the opposite direction. Even as this conviction stands, I hope that some readers of this dissent will see the light and see how inherently unjust and how

---

and overcrowding our prisons and jails. Most of our criminal cases involve drug-user related crimes. If we could bridle our intemperate "rage to punish" and involve addicts like Ms. Colon in the penal system only when other measures fail, we would have a lot more time and attention to devote to the "real" criminals, the rapists, robbers, murderers and for-real drug traffickers.

socially counterproductive it is to send this retarded mother of three off to prison for twelve years because she has allowed herself to become addicted to the use of unprescribed mood-elevators.