*1040
 
 OPINION
 

 Per Curiam:
 

 After a jury trial, appellant Juan Salgado was convicted of one count of trafficking in a controlled substance. He claims that the district court erroneously admitted evidence'of his prior drug transactions without requiring the state to prove those acts by clear and convincing evidence as required by Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985), and its progeny.
 

 FACTS
 

 The state’s main witness at trial was Chad Hambel, who had been arrested for and charged with drug trafficking. In the hope of receiving a more lenient sentence, Hambel agreed to assist the state and identified Salgado as a drug source.
 

 According to Hambel’s testimony, on May 30, 1995, Hambel called Salgado and asked to buy some methamphetamine. They agreed to meet at the Wal-Mart in Reno. Narcotics unit officers rigged Hambel with recording equipment and gave him $800.00 in marked bills. Hambel met Salgado at the Wal-Mart and gave him $500.00. Salgado left and returned forty-five minutes later. He and Hambel walked inside the store and into a restroom. Salgado gave Hambel a package containing about an ounce of methamphetamine, and Hambel gave Salgado an additional $260.00.
 

 Police later stopped the car that Salgado was riding in. Jose Barragan was driving the car. Police arrested both men, but later released Barragan. Police found some of the marked bills on Salgado.
 

 Salgado’s defense was that he was only a procuring agent and did not profit from the sale. He testified that he met Hambel at work and considered him a friend; that Hambel asked him for help in getting drugs; and that he introduced Hambel to the actual sellers. Salgado maintained that he himself never sold contraband to Hambel. More particularly, Salgado claimed that on the second encounter at the Wal-Mart, he was accompanied by Barragan and that it was Barragan who sold the methamphetamine to Hambel in a restroom. Thereafter, according to Salgado, Barragan gave him some money to pay off a debt.
 

 
 *1041
 
 Before trial, the parties argued the admissibility of evidence of prior drag dealings between Hambel and Salgado. The district court ruled that details of the prior transactions would not be admissible in the state’s case in chief. The court reserved ruling on use of the evidence in the defense case or on rebuttal. ■
 

 After the defense rested, the prosecutor argued outside the presence of the jury that evidence of prior drug dealings between Salgado and Hambel was admissible in rebuttal. Over objection, the district court ruled in favor of the state, reasoning in part as follows:
 

 The defendant has now testified. The heart of this trial is the jury’s assessment of the credibility of the informant and of the defendant. The stories are strikingly different.
 

 Any decision by the jury in this case . . . depends upon the assessment of the credibility of these witnesses and the assessment of the relationship with each other and whether this is a case of two people who have been deeply involved in narcotics trafficking with each other [and] were simply doing another deal ... or [as] the defendant contends a case of a person already convicted of a serious narcotics crime attempting to buy his freedom by making false accusations against the defendant.
 

 The court found the evidence relevant under NRS 48.045(2). It also found that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. NRS 48.035(1).
 

 Hambel then testified that he had bought marijuana and methamphetamine from Salgado once or twice a week for about eight months, that the transactions usually occurred at Hambel’s home, that Salgado often consumed some of the drugs, and that Salgado sometimes sold him drugs on credit.
 

 The jury found Salgado guilty of trafficking in a controlled substance. The district court sentenced him to a prison term of ten years and ordered him to pay a fine of $100,000.00 and restitution in the amount of $500.00.
 

 DISCUSSION
 

 Salgado points out that the state made only an offer of proof before the district court ruled that the evidence of the prior drug transactions was admissible. He claims that this was reversible error under
 
 Petrocelli
 
 and its progeny, which require clear and convincing proof of any collateral acts before admitting evidence of the acts.
 

 
 *1042
 
 Before admitting evidence of a defendant’s collateral acts, the court must determine three things on the record and outside the presence of the jury: whether admission of the evidence is justified, whether it is proven by clear and convincing evidence, and whether the danger of unfair prejudice substantially outweighs its probative value. Meek v. State, 112 Nev. 1288, 1292-93, 930 P.2d 1104, 1107 (1996).
 

 Salgado does not challenge the sufficiency of the evidence against him, nor does he contend that the evidence of the prior drug transactions was not relevant or that its probative value was substantially outweighed by unfair prejudice. His challenge goes solely to the failure of the prosecution to put a witness on the stand outside the presence of the jury to establish clear and convincing proof of the prior acts.
 

 The state cites Colon v. State, 113 Nev. 484, 938 P.2d 714 (1997), for the proposition that no
 
 Petrocelli
 
 hearing is required when evidence is offered to rebut a procuring agent defense. This reading of
 
 Colon
 
 is too broad, although some of the language in that opinion is susceptible to such a reading. We therefore take this opportunity to clarify our holding in
 
 Colon.
 

 The appellant in
 
 Colon
 
 was convicted of selling methamphetamine, despite her claim that she was only a procuring agent. Colon contended that the prosecutor erred by introducing certain evidence without holding a
 
 Petrocelli
 
 hearing. The evidence concerned Colon’s knowledge of marijuana being grown by a third person, her knowledge that a man in her apartment offered to obtain drugs for another person, and the fact that Colon had bailed a suspected drug dealer out of jail.
 
 Colon,
 
 113 Nev. at 491-92, 938 P.2d at 719. The opinion holds simply that “this evidence was clearly admissible because the State was required to disprove the procuring agency and [to prove] that Colon had a predisposition to sell controlled substances. A
 
 Petrocelli
 
 hearing was not required.”
 
 Id.
 
 at 492, 938 P.2d at 719 (citations omitted). This holding is limited by the facts of the case. The evidence in question did not relate to acts which necessitate a
 
 Petrocelli
 
 hearing because it did not implicate “prior bad acts” on Colon’s part or “collateral offenses” for which she could have been charged. The evidence simply concerned facts which were relevant to prove that Colon was not a procuring agent, a burden which the state had to meet to prove its case. It was neither irrelevant character evidence nor evidence of collateral acts requiring a
 
 Petrocelli
 
 hearing before its admission.
 

 Therefore, the holding in
 
 Colon
 
 does not apply to this case, which involves illegal drug transactions which are clearly collat
 
 *1043
 
 eral offenses necessitating a
 
 Petrocelli
 
 hearing. Thus, the question is whether the failure to hold a formal evidentiary hearing outside the presence of the jury constituted error. We conclude that it did not.
 

 In
 
 Petrocelli,
 
 “the state
 
 apprised
 
 the trial judge of the quantum and quality of its evidence proving that the defendant had committed the prior offense.”
 
 Petrocelli,
 
 101 Nev. at 52, 692 P.2d at 507 (emphasis added). We concluded that this procedure “was correct.”
 
 Id.
 
 at 52, 692 P.2d at 508.
 

 [Bjefore evidence of a prior bad act can be admitted, the state must show, by plain, clear and convincing evidence that the defendant committed the offense. The state’s
 
 offer of proof
 
 fulfilled this requirement. Petrocelli’s own admission, coupled with eyewitness testimony, established by the requisite standard of proof that Petrocelli killed Melanie Barber. Moreover,
 
 the state properly demonstrated the quality of its evidence on the subject by actually calling the eyewitness on rebuttal.
 

 Id.
 
 (citation omitted) (emphasis added). Thus, under
 
 Petrocelli,
 
 clear and convincing proof of collateral acts can be established by an offer of proof outside the presence of the jury combined with the quality of the evidence actually presented to the jury.
 

 The admission of evidence of collateral acts lies within the sound discretion of the district court, and this court will respect that court’s determination unless it is manifestly wrong.
 
 Id.
 
 We conclude that the state presented clear and convincing evidence of Salgado’s prior drug transactions and that the district court did not abuse its discretion in admitting the evidence.
 

 CONCLUSION
 

 The district court did not abuse its discretion in admitting evidence of Salgado’s prior drug transactions. We therefore affirm the judgment of conviction.